**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SONJAH H.,

                              Plaintiff,                    No. 3:17-CV-1324
                                                           (CFH)

          v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                              Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

Lachman, Gorton Law Firm                  PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration            HEETANO SHAMSOONDAR, ESQ.
Office of Regional General Counsel        Special Assistant U.S. Attorney
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

Currently before the Court, in this Social Security action filed by Sonjah H.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on

the pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 9 and

14.)[1]  For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1979, making her 34 years old at the alleged onset date. Plaintiff reported completing the eighth grade.  Plaintiff has past work as a child monitor, office cleaner, and telephone solicitor (as identified by the vocational expert at the administrative hearing).  At the initial level, Plaintiff alleged disability due to dislocated cervical discs, pulled lumbar tendons, an affective disorder, anxiety disorder, and a learning disorder.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on May 9, 2014, alleging disability beginning June 18, 2013.  Plaintiff's application was initially denied on October 13, 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Kenneth

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 7.

Theurer on February 3, 2017.  (T. 154-84.)[2]   On April 14, 2017, the ALJ issued a

written decision finding Plaintiff was not disabled under the Social Security Act.  (T.

7-26.)  On October 19, 2017, the Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)


## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and

conclusions of law.  (T. 12-21.)  First, the ALJ found that Plaintiff meets the insured

status requirements of the Social Security Act through December 31, 2019.  (T. 12.)

Second, the ALJ found that Plaintiff engaged in substantial gainful activity between

January 2015 and December 2015, but that there had been a continuous 12-month

period during which she did not engage in substantial gainful activity.  (T. 12-13.)  Third,

the ALJ found that Plaintiff's posttraumatic stress disorder ("PTSD"), bipolar disorder,

panic disorder, obsessive compulsive disorder ("OCD"), learning disorder, attention

deficit hyperactivity disorder ("ADHD"), substance abuse, osteoarthritis of the cervical

and thoracic spine, and degenerative disc disease of the cervical and lumbar spine are

severe impairments.  (T. 13.)  Fourth, the ALJ found that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T.

13-15.)  Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 12.04

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

(depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma- and stressor-related disorders). (Id.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

> occasionally lift twenty pounds; frequently lift ten pounds; sit for up to six hours; stand or walk for approximately four hours in an eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; perform occasional balancing and stooping; and rarely kneel, crouch, and crawl (rarely is defined as less than occasional but more than never). She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; and can relate to and interact with others to the extent necessary to carry out simple tasks but should avoid work requiring more complex interaction or joint efforts to achieve work goals and she should not have more than incidental interaction with the public. She can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks and work in a stable, unchanging work environment.

(T. 15-16.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 19.) Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 20.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes three arguments in support of her motion for judgment

4

on the pleadings. (Dkt. No. 9, at 15-27 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ erred in finding she has no limitation in her ability to work consistently despite the medical sources (including consultative examiner Mary Ann Moore, Psy.D., primary care physician Darlene Denzien, D.O., and non-examining consultant K. Lieber-Diaz, Ph.D.) finding some amount of diminishment in her ability to work consistently. (Id. at 15-16.) Plaintiff also argues that the ALJ substituted his opinion for these medical opinions. (Id. at 16.)

Second, Plaintiff argues that the ALJ erred in weighing the medical opinions of Dr. Lieber-Diaz, Dr. Denzien, and Dr. Moore. (Dkt. No. 9, at 16-25 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ's conclusion to give great weight to Dr. Lieber-Diaz's opinion is not supported by substantial evidence because the ALJ's analysis consists of one conclusory sentence and provides no explanation sufficient to allow for meaningful judicial review or any special medical records supporting the ALJ's conclusion. (Id. at 17-20.) Plaintiff argues that Dr. Lieber-Diaz's opinion should have been given very little weight because (a) Dr. Lieber-Diaz had no treatment relationship with Plaintiff and never examined her, (b) Dr. Lieber-Diaz is not a medical doctor, (c) the opinion consists of a standardized form with mostly conclusory findings without any supporting explanations, and (d) the opinion is inconsistent with Plaintiff's diagnosis of PTSD, Dr. Moore's conclusions and findings, Dr. Denzien's opinion, the findings of psychologist Marilyn Geller, Ph.D., the assessment of a Global Assessment of Functioning ("GAF") score of 50 by psychologist Nathan Hare, Ph.D., and the clinical records showing pervasive depression and anxiety. (Id. at 18-19.) Plaintiff also

5

contends the ALJ erred in claiming that Dr. Lieber-Diaz's opinion was supported by Plaintiff's response to conservative treatment.  (Id. at 20.)

Plaintiff argues that the ALJ improperly weighed Dr. Denzien's treating opinion in giving it partial weight rather than controlling weight as her opinion is well-supported and not inconsistent with substantial other evidence.  (Dkt. No. 9, at 20-24 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ improperly substituted his own judgment in concluding Dr. Denzien's opinion was not supported by her own clinical records without relying on a contrary medical opinion.  (Id. at 20.)  Plaintiff argues the ALJ further erred in failing to analyze the regulatory factors and failing to provide good reasons for the weight afforded to Dr. Denzien's opinion.  (Id. at 22.)

Plaintiff argues that the ALJ improperly weighed Dr. Moore's opinion in giving it partial weight because the ALJ's conclusion regarding the ability to work consistently is simply wrong and the records support Dr. Moore's opinion.  (Dkt. No. 9, at 24-25 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ's weighing of this opinion is inconsistent with his own findings and with Dr. Lieber-Diaz's opinion (to which the ALJ afforded great weight).  (Id. at 25.)  Plaintiff argues that the ALJ improperly substituted his lay judgment for that of Dr. Moore's competent medical opinion without citing to contrary medical opinion and that Dr. Moore's opinion should have been given more than partial weight because (a) she has significant programmatic expertise, (b) she personally examined Plaintiff and performed comprehensive testing, and (c) her opinions are consistent with her testing results and examination, Dr. Denzien's opinion, and the overall medical evidence.  (Id.)

Third, Plaintiff argues that the Step Five determination is not supported by substantial evidence because the RFC does not properly account for the full extent of Plaintiff's exertional and non-exertional limitations and the resulting vocational expert ("VE") testimony does not provide substantial support for the ALJ's RFC and the Step Five determinations.  (Dkt. No. 9, at 26 [Pl.'s Mem. of Law].)

## 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes three arguments in support of her general argument that substantial evidence supports the Commissioner's final decision.  (Dkt. No. 14, at 6-17 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ properly evaluated the medical opinion evidence from Dr. Lieber-Diaz, Dr. Moore, and Dr. Denzien.  (Id. at 6-13.)  Specifically, Defendant argues that Dr. Lieber-Diaz's assessment of moderate limitations is consistent with the ability to perform unskilled work and that Dr. Lieber-Diaz opined Plaintiff would be capable of simple, unskilled work in a low contact setting, which is consistent with the RFC for a range of unskilled work.  (Id. at 7.) Defendant contends the ALJ provided a thorough discussion of the evidence in record and then stated Dr. Lieber-Diaz's opinion that Plaintiff was capable of simple, unskilled work in a low contact setting was consistent with the record.  (Id.)  Defendant argues Dr. Lieber-Diaz's opinion is consistent with the findings and opinion of Dr. Moore and Plaintiff's self-reported activities of daily living during the relevant period.  (Id. at 7-8.) Defendant contends that the ALJ's analysis need not follow formalistic recitations or Plaintiff's favored format and that it is sufficient to permit judicial review and is

supported by substantial evidence.  (Id. at 8.)

Defendant argues that the ALJ properly considered Dr. Denzien's opinion and did not give it greater weight because the assessed limitations were unsupported by the record, including the doctor's own findings as well as the findings and opinions of Dr. Moore and Dr. Lieber-Diaz.  (Dkt. No. 14, at 9-12 [Def.'s Mem. of Law].)  Defendant also contends that Dr. Denzien's opined limitations are inconsistent with Plaintiff's activities of daily living.  (Id. at 12.)  Defendant argues that Plaintiff's argument regarding the ALJ's weighing of Dr. Moore's opinion must fail for the same reasons identified with regard to Dr. Denzien's opined limitations and that Dr. Moore's limitations were not consistent with the record, including Dr. Lieber-Diaz's opinion as well as Plaintiff's work activity and daily activities during the relevant period.  (Id. at 12-13.)  Second, Defendant argues that the RFC finding is supported by substantial evidence.  (Id. at 13-15.)  Specifically, Defendant argues that neither Dr. Moore nor Dr. Lieber-Diaz assessed any limitations in Plaintiff's ability to work consistently and that the ALJ considered the opined limitations from these sources, finding that the marked limitations in the ability to maintain a regular schedule opined by Dr. Moore were not supported by the record and affording great weight to Dr. Lieber-Diaz's opinion.  (Id. at 13-14.)  Defendant contends that Dr. Lieber-Diaz's opinion, from a highly-qualified psychologist who is also an expert in Social Security disability law, constitutes substantial evidence when it is supported by evidence in the record.  (Id. at 14.)  Defendant also argues that the ALJ is not bound by an opinion, even if it is uncontradicted.  (Id. at 14-15.)

Third, Defendant argues that the ALJ's Step Five finding is supported by

substantial evidence in that the ALJ properly weighed all the evidence and arrived at an RFC finding that was supported by the record.  (Dkt. No. 14, at 15-17 [Def.'s Mem. of Law].)  Specifically, Defendant argues that the ALJ posed a proper hypothetical question to the VE and properly relied on the VE's testimony in finding that Plaintiff could perform jobs existing in significant numbers in the national economy.  (Id. at 16.)

### 3. Plaintiff's Reply Memorandum of Law

On reply, Plaintiff presents several arguments.  (Dkt. No. 15, at 2-6 [Pl.'s Reply Mem. of Law].)  First, Plaintiff argues that case law does not state an assessment of moderate limitations means that a claimant can meet the demands of work as a matter of law and words such as "moderate" are too vague to constitute substantial evidence for an ALJ's RFC.  (Id. at 2.)

Second, Plaintiff argues that, contrary to Defendant's contention, Dr. Lieber-Diaz's statement that Plaintiff could perform simple, unskilled work in a low contact setting is a conclusion not an explanation.  (Dkt. No. 15, at 2 [Pl.'s Reply Mem. of Law].)

Third, Plaintiff argues that Dr. Lieber-Diaz's relevant conclusions are inconsistent with those of Dr. Moore and Dr. Lieber-Diaz's opinion should be given no (or very little weight) because her only explanation for her opinion is limited to a restatement of some of Dr. Moore's findings and her ultimate opinions and conclusions (which are contrary to those of Dr. Moore) are unsubstantiated.  (Dkt. No. 15, at 3-4 [Pl.'s Reply Mem. of Law].)

9

Fourth, Plaintiff argues that Defendant cites no evidence indicating Plaintiff performed her activities of daily living at a level consistent with the ability to perform light work or that they were performed under conditions comparable with the demands of full-time light work.  (Dkt. No. 15, at 4-5 [Pl.'s Reply Mem. of Law].)

Fifth, Plaintiff reasserts that someone with up to marked difficulties maintaining a regular work schedule and who is likely to be absent three or more days per month and/or off-task more than 33 percent of the day (limitations Plaintiff argues she has) is not going to be able to meet the demands of a full-time work schedule on a regular and continuing basis.  (Dkt. No. 15, at 5 [Pl.'s Reply Mem. of Law].)

Sixth, Plaintiff argues her burden to bring forth evidence of her limitations through Step Four is satisfied by the three undisputed medical opinions which all assess at least some degree of limitations to work pace.  (Dkt. No. 15, at 5-6 [Pl.'s Reply Mem. of Law].)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. See Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Opinion Evidence and Plaintiff's RFC

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at

375 (quoting <u>Burgess</u>, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'"  <u>Pardee v. Astrue</u>, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting <u>Melville v. Apfel</u>, 198 F.3d 45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  <u>Pardee</u>, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'"  <u>Hendrickson v. Astrue</u>, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these

consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Here, the ALJ found that Plaintiff can perform a modified range of light work.  (T. 15-16.)  In so doing, the ALJ considered the various opinions of record along with Plaintiff's testimony and treatment.  (T. 15-19.)

### i. The ALJ's Analysis of the Opinion Evidence

In October 2014, as part of the initial determination, non-examining consultant Dr. Lieber-Diaz found that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and no repeated episodes of decompensation of extended duration.  (T. 201.)  Dr. Lieber-Diaz indicated Plaintiff would be capable of simple, unskilled work in a low contact setting.  (T. 203-04.)  The ALJ afforded great weight to this opinion, noting that Dr. Lieber-Diaz was an acceptable medical source who reviewed Plaintiff's medical and other records and that the finding indicating Plaintiff was capable of simple, unskilled work in a low contact setting was consistent with Plaintiff's clinical findings and

response to conservative treatment.  (T. 18, 425-852.)

The record contains several opinions from primary care physician Dr. Denzien, noted by the ALJ at Exhibits C3F, C8F, C13F, C15F, C17F, and C18F.  (T. 18, 453-31, 636-81, 749-57, 772-85, 847-54.)  At C3F, in April and May 2011 Dr. Denzien thought it best to take Plaintiff out of the workplace.  (T. 467-70.)  It appears Dr. Denzien indicated in July and August 2011 that Plaintiff had failed both physical therapy and chiropractic care and had a 100 percent disability causally related to her previous work injury.  (T. 477, 483.)  In September 2011, Dr. Denzien continued to recommend Plaintiff be out of work for an additional two months.  (T. 493.)  In December 2011, Dr. Denzien indicated Plaintiff remained 100 percent disabled for work and noted that, although she might be able to do a desk job on the basis of her back and neck injuries, PTSD and severe depression were making it very difficult for her to even keep up with simple tasks at home, let alone start working at a job.  (T. 503.)  In January 2012, Dr. Denzien indicated she had given Plaintiff a work note stating she could work four hours a day, five days a week with no lifting greater than 10 pounds.  (T. 454.)  In August 2012, Dr. Denzien indicated a 75 percent disability causally related to the injury.  (T. 492.)  In September 2012, she noted that she did not expect Plaintiff's pain to get much better, but she did expect Plaintiff would be able to cope with it and hopefully would be able to return to productive work.  (T. 499.)

Exhibit C8F contains a November 2014 assessment from Dr. Denzien, noting herniated cervical discs, lumbar spinal stenosis, PTSD, and depression with mental limitations as well as limitations to lifting, carrying, walking, standing, bending, and

sitting and indicating Plaintiff could work with limitations.  (T. 662-63.)

In December 2016, Dr. Denzien completed a medical source statement opining that Plaintiff could occasionally lift/carry up to 20 pounds, sit for one hour at a time for a total of four hours, stand for 20 minutes at a time for a total of two hours, and walk for 20 minutes at a time for a total of one hour while spending the rest of the time stretching, reclining, and lying down.  (T. 750-51, 847-48.)  Dr. Denzien opined that Plaintiff could continuously handle, finger and feel, occasionally reach overhead and frequently reach in other directions, occasionally push/pull, occasionally use her feet for the operation of foot controls, occasionally climb stairs/ramps and balance, and never climb ladders or scaffolds, stoop, kneel, crouch or crawl.  (T. 752-53, 849-50.)  She opined that Plaintiff could continuously tolerate humidity, wetness and pulmonary irritants, occasionally tolerate unprotected heights, moving mechanical parts, operating a motor vehicle, extreme heat and vibrations, and never tolerate extreme cold.  (T. 754, 851.)  She indicated these limitations were first present on November 4, 2010.  (T. 755, 852.)

At Exhibit C15F, Dr. Denzien indicated in April and October 2016 that Plaintiff was unable to work for six months, noting Plaintiff's herniated cervical discs, spinal stenosis, neck strain, migraine headaches, severe depressive disorder, PTSD, and anxiety.  (T. 775, 778, 780.)  In December 2016, Dr. Denzien completed a report noting herniated cervical discs and spinal stenosis and indicating that Plaintiff was capable of working 15-25 hours per week with limitations on walking, standing, sitting, walking stairs, squatting, bending, using her bilateral upper extremities, reaching above her

shoulders, and environmental factors.  (T. 772-73.)

In February 2017, Dr. Denzien noted Plaintiff's PTSD and opined that Plaintiff had marked limitations in maintaining attention and concentration and completing a normal workday and workweek and medium limitations in performing activities within a schedule, maintaining regular attendance, and/or being punctual within customary tolerances.  (T. 853.)  She opined extreme limitations in accepting instructions and responding appropriately to criticism from supervisors, marked limitations in getting along with coworkers, and medium limitations in the ability to interact appropriately with the general public as well as extreme limitations in the ability to respond appropriately to ordinary stressors in a work setting with simple tasks.  (T. 853.)  Dr. Denzien opined that Plaintiff would be off-task more than 33 percent of the day and would have three or more absences per month.  (T. 854.)

The ALJ afforded partial weight to Dr. Denzien's opinions, noting she was an acceptable medical source who had examined and treated Plaintiff in her capacity as a primary care physician.  (T. 18, 453-31, 636-81, 749-57, 772-85, 847-54.)  The ALJ noted Dr. Denzien's finding that Plaintiff could lift and carry at a light level of exertion and had some limitations in standing, walking, climbing and balancing was consistent with Plaintiff's medical imaging, presentation during physical exams, positive response to treatment, and varied activities of daily living.  (T. 8, 345-55, 425-852.)  The ALJ indicated that he did not give greater weight to Dr. Denzien's opinions because the records did not support her remaining findings and that her clinical findings did not show Plaintiff exhibited difficulties lifting more than ten pounds, sitting, using her hands,

maintaining socially appropriate behavior, or staying on task. (T. 18-19, 345-55, 425-852.) The ALJ also noted the objective evidence of record did not support the finding that Plaintiff would miss three or more days of work per month. (T. 19, 425-852.)

In October 2011, William H. Connor, Ph.D., completed a psychological independent medical examination and noted that Plaintiff appeared to have a chronic pain disorder and a mood disorder not otherwise specified with a need to rule out bipolar disorder. (T. 513.) Dr. Connor also indicated Plaintiff had cocaine dependence in remission and that there was insufficient evidence to substantiate her current PTSD diagnosis. (T. 513.) The ALJ gave partial weight to Dr. Connor's opinion, noting he was an acceptable medical source who had examined Plaintiff, but that he provided no function-by-function assessment of her abilities. (T. 19, 511-13.) The ALJ noted Dr. Connor found Plaintiff's ability to work depended on physical, not psychiatric disability. (T. 19, 513.)

In October 2014, consultative examiner Dr. Moore noted impaired attention and concentration (possibly due to learning issues and depression) as well as impaired recent and remote memory skills, below average range of cognitive functioning, and fair insight and judgment with depression and mood swings. (T. 630-31.) Dr. Moore diagnosed PTSD, bipolar II disorder with possible psychotic features, cannabis abuse in remission, and an unspecified learning disorder. (T. 632.) Dr. Moore opined that Plaintiff showed no limitation in regard to following and understanding simple directions and instructions or performing simple tasks independently, but had moderate limitations

in regard to maintaining attention and concentration, learning new tasks, and performing complex tasks independently as well as moderate-to-marked limitation in regard to appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule.  (T. 631.)  Dr. Moore noted that the results of the examination appeared to be consistent with psychiatric issues which might significantly interfere with Plaintiff's ability to function on a daily basis.  (T. 632.)

In August 2016, Dr. Moore noted intact attention and concentration and impaired recent and remote memory skills for more complex and remote information, low average cognitive functioning with much weaker verbal skills and average-to-above-average visual skills, and fair-to-poor insight and judgment with continued mood swings, depression and anxiety.  (T. 735-36.)  An intelligence evaluation indicated Plaintiff needed some repetition of instructions due to difficulty with attention and she showed some slight distractibility.  (T. 743.)  Plaintiff had a full scale IQ ("FSIQ") of 84 and exhibited a significant split between deficits seen in her verbal comprehension versus her high average processing speed, which was indicative of a learning disorder.  (T. 743-44.)

Dr. Moore diagnosed PTSD, bipolar II disorder with psychotic features, panic disorder without agoraphobia, OCD (specifically in regard to germs), a learning disorder with auditory/verbal processing difficulties, ADHD (combined type), cannabis abuse in remission, and alcohol abuse in partial remission.  (T. 737, 745.)  She opined that Plaintiff showed no limitation with regard to following and understanding simple

directions and instructions or performing simple tasks independently, but had mild limitation with regard to maintaining attention and concentration and moderate limitation with regard to learning new tasks and performing complex tasks independently. (T. 736, 744.) Dr. Moore opined that Plaintiff had moderate-to-marked limitations with regard to appropriately dealing with stress, relating adequately with others, making appropriate work decisions, and maintaining a regular work schedule. (Id.) She noted that the results of the examination appeared to be consistent with psychiatric and cognitive issues which might significantly interfere with Plaintiff's ability to function on a daily basis. (T. 736, 745.)

The ALJ afforded partial weight to Dr. Moore's opinions from October 2014 and August 2016 as an acceptable medical source who had examined Plaintiff on two occasions. (T. 19, 627-33, 731-48.) The ALJ noted that her finding that Plaintiff had up to marked mental limitations was generally consistent with Plaintiff's mental status exams and response to conservative treatment, but that he did not give greater weight to this opinion because these records did not support the finding that Plaintiff had up to moderate limitations in maintaining her attention and concentration or moderate-to-marked limitations in maintaining a regular work schedule. (T. 19, 425-852.)

In September 2014, consultative examiner Dr. Jenouri diagnosed pain in the lower back, neck, right shoulder, right foot and right lower extremity as well as right upper extremity paresthesia, prediabetes, and a history of depression and bipolar. (T. 686.) He opined that Plaintiff had a mild-to-moderate restriction in walking, standing,

and sitting for long periods as well as bending, stair climbing, lifting, and carrying. (T. 626.) In August 2016, Dr. Jenouri diagnosed neck and low back pain and bilateral upper and lower extremity radiculopathy as well as a history of depression, ADHD, bipolar, and anxiety. (T. 728.) He opined that Plaintiff was moderately limited to walking and standing for periods of two hours and fewer than four hours, pushing, pulling and bending for periods of two hours and fewer than four hours, and stairs and other climbing for periods of two hours and fewer than four hours, and she had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. (T. 729.) The ALJ gave great weight to Dr. Jenouri's opinions from September 2014 and August 2016 as an acceptable medical source who had examined Plaintiff on two occasions. (T. 19, 623-26, 725-30.) The ALJ noted Dr. Jenouri's finding that Plaintiff had mild-to-moderate physical limitations was consistent with her medical imaging, physical exams, and response to treatment. (T. 19, 425-852.)

Finally, the ALJ gave no weight to the various statements regarding Plaintiff's percentage of disability for Workers' Compensation purposes and/or statements that she was unable to work as these opinions did not provide a function-by-function assessment of her abilities and addressed an issue reserved for the Commissioner. (T. 19, 453-622, 740-48.)

### ii. The Court's Analysis

Plaintiff argues that (a) the ALJ erred in finding Plaintiff has no limitation in her ability to work consistently, (b) the ALJ substituted his opinion for opinions from Dr.

Moore, Dr. Denzien, and Dr. Lieber-Diaz (which found some amount of diminishment in the ability to work consistently), and (c) the ALJ erred in weighing the medical opinions. (Dkt. No. 9, at 15-25 [Pl.'s Mem. of Law]; Dkt. No. 15, at 2-6 [Pl.'s Reply Mem. of Law].) The Court finds these arguments unpersuasive.

First, the ALJ indicated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and that, as required by SSR 96-8p, the RFC had been assessed based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all Plaintiff's medically determinable impairments. (T. 16.)

Second, the ALJ's overall decision indicates careful consideration of the evidence including the various opinions of record. (T. 10-21.) Within his RFC analysis, the ALJ included specific reasons as to the weight afforded to each opinion, allowing this Court to assess whether those opinions were properly considered. (T. 15-19.) For example, the ALJ afforded great weight to Dr. Lieber-Diaz's opinion, indicating that the consultant was an acceptable medical source who had reviewed Plaintiff's medical and other records and that his finding that Plaintiff was capable of simple, unskilled work in a low contact setting was consistent with the clinical findings and her response to conservative treatment. (T. 18, 201, 203-04, 425-852.) Contrary to Plaintiff's argument, this analysis does allow for meaningful judicial review as the ALJ did provide specific reasons for the weight afforded to Dr. Lieber-Diaz's opinion as well as the other medical opinions of record. (Dkt. No. 9, at 17-20 [Pl.'s Mem. of Law]; Dkt. No. 15, at 3-4 [Pl.'s Reply Mem. of Law].)

Third, while Plaintiff argues that Dr. Lieber-Diaz's opinion should have been given very little weight, the ALJ was entitled to rely on this opinion as it was from a qualified expert in the field of social security disability and determined to be supported by medical evidence in the record.  See Frey, 485 F. App'x at 487; Little, 2015 WL 1399586, at *9.  The Court also notes that it was within the ALJ's purview to review all the evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole.  See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Petell v. Comm'r of Soc. Sec., No. 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); see also Quinn v. Colvin, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)); West v. Comm'r of Soc. Sec., No. 15-CV-1042, 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), report and recommendation adopted by 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing Matta, 508 F. App'x at 56).  Further, it is apparent that the ALJ did not rely solely on Dr. Lieber-Diaz's opinion because he also afforded partial weight to the opinions of Dr. Denzien, Dr. Connor, and Dr. Moore and included limitations in the final

24

RFC which were more specific than those opined by Dr. Lieber-Diaz. (T. 15, 18-19.)

In relation to Dr. Lieber-Diaz's opinion, Plaintiff also argues that case law does not state an assessment of moderate limitations means that a claimant can meet the demands of work as a matter of law and words such as "moderate" are too vague to constitute substantial evidence for an ALJ's RFC. (Dkt. No. 9, at 23-24 [Pl.'s Mem. of Law]; Dkt. No. 15, at 2 [Pl.'s Reply Mem. of Law].) Again, it is clear that the ALJ did not rely entirely on Dr. Lieber-Diaz's opinion in assessing Plaintiff's RFC and he sufficiently explained the reasons for the weight afforded to each opinion in determining the RFC, including those which opined moderate limitations.

Fourth, it is apparent from the ALJ's decision that he did not substitute his own opinion for that of competent medical opinion contrary to Plaintiff's arguments. (Dkt. No. 9, at 16, 20, 25 [Pl.'s Mem. of Law].) There is a difference between analyzing medical records to determine what the weight of the evidence supports and interpreting raw medical data that would require the expertise of a physician or other trained medical source; the ALJ is precluded from doing only the latter. See Hanson v. Comm'r of Soc. Sec., No. 15-CV-0150, 2016 WL 3960486, at *9 (N.D.N.Y. June 29, 2016), report and recommendation adopted by 2016 WL 3951150 (N.D.N.Y. July 20, 2016) (noting that, while it is impermissible for an ALJ to interpret "raw medical data" and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record); see also Matta, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole."); <u>Zongos v.</u> <u>Colvin</u>, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Similarly, contrary to Plaintiff's argument that the ALJ erred in finding Plaintiff has no limitation in her ability to work consistently despite the opinions of Dr. Moore, Dr. Denzien and Dr. Lieber-Diaz finding some amount of diminishment in the ability to work consistently, the ALJ's decision indicates a detailed review of the evidence of record and an RFC that is supported by substantial evidence. (Dkt. No. 9, at 15-16 [Pl.'s Mem. of Law]; Dkt. No. 15, at 2-6 [Pl.'s Reply Mem. of Law].) Again, the RFC does not need to correspond perfectly with any of the opinions. <u>Matta</u>, 508 F. App'x at 56; <u>Zongos</u>, 2014 WL 788791, at *9.

Finally, Plaintiff's arguments regarding the ALJ's consideration of the opinions from Dr. Denzien and Dr. Moore are unpersuasive. (Dkt. No. 9, at 20-25 [Pl.'s Mem. of Law].) The ALJ provided sufficiently specific reasons for the weight afforded to these opinions by indicating that greater weight was not given to these opinions because the record did not support some of the findings contained therein. (T. 18-19.) Again, the ALJ was not required to explicitly go through each and every factor of the regulations where, as here, his reasoning and adherence to those regulations is clear. <u>Blinkovitch</u>, 2017 WL 782979, at *4 (internal citations omitted). Further, the ALJ explicitly noted Dr. Denzien was an acceptable medical source who had examined Plaintiff in her capacity as a primary care physician and also cited 20 C.F.R. § 404.1513, indicating that the ALJ

implicitly considered the regulations and requisite regulatory factors in weighing this opinion.  (T. 18.)  The ALJ also noted Dr. Moore was an acceptable medical source who had examined Plaintiff on two occasions, again citing 20 C.F.R. § 404.1513.  (T. 19.)

For the reasons outlined above, the ALJ's analysis of the opinion evidence as well as the resulting RFC are supported by substantial evidence.  Remand is therefore not required on these bases.


**B. Whether Substantial Evidence Supports the ALJ's Step Five Finding**

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'"  McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved."  McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).  "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability."  Pardee, 631 F. Supp. 2d at 211

(citing <u>Melligan v. Chater</u>, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff is unable to perform any past relevant work because it exceeds her RFC capacity and noted that this finding was consistent with the VE's testimony.  (T. 19, 178-81.)  The ALJ then found that Plaintiff could perform other jobs existing in significant numbers in the national economy including photocopy machine operator, garment folder, and document preparer, again based on the VE testimony.  (T. 20, 178-81.)  The ALJ also indicated that a finding of "not disabled" was appropriate under the framework of Medical-Vocational Rule 202.18. (T. 20.)

Plaintiff argues that the Step Five determination is not supported by substantial evidence because the RFC does not properly account for the full extent of her exertional and non-exertional limitations and the resulting VE testimony does not provide substantial support for the ALJ's RFC and Step Five determinations.  (Dkt. No. 9, at 26 [Pl.'s Mem. of Law].)  On reply, Plaintiff argues that her burden to bring forth evidence of her limitations through Step Four is satisfied by the three undisputed medical opinions which all assess at least some degree of limitations to work pace. (Dkt. No. 15, at 5-6 [Pl.'s Reply Mem. of Law].)  The Court finds these arguments unpersuasive.

As discussed in Section III.A. of this Decision and Order, the Court finds that the ALJ's findings regarding Plaintiff's RFC and the opinion evidence are supported by substantial evidence.  The ALJ's decision provides sufficient, supported explanation for

his findings and Plaintiff has not shown that further limitations were credibly established. The hypothetical posed to the VE accurately reflected the RFC, which the Court has found to be supported by substantial evidence. (T. 15-16, 178-81.) Therefore, the Court finds that the ALJ's Step Five finding is supported by substantial evidence. Remand is not required on this basis.

## IV. CONCLUSION

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the plaintiff's motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 25, 2019
　　　　　Albany, New York

Christian F. Hummel
U.S. Magistrate Judge